IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

IRONHEAD MARINE, INC.,

                Plaintiff,                Case No. 3:10 CV 82

-vs-

                                                MEMORANDUM OPINION

DONALD C. HANNA CORPORATION, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on the Motion to Dismiss (Doc. No. 58) of Defendant Oliver Schrott Kommunikation GmbH ("OSK"). The Court notes diversity jurisdiction under 28 U.S.C. §1332 and proper venue under 28 U.S.C. §1391. For the reasons stated below, OSK's motion will be granted in part and denied in part.

**I. BACKGROUND**

Plaintiff Ironhead Marine, Inc. ("Plaintiff" or "Ironhead") sued all defendants to recover fees it claims owed and unpaid in connection with work done to adapt a barge to carry the Exiderdome exhibit (the barge). Ironhead is suing not only the owners of the barge, Hannah Brothers and Hannah Maritime Corporation (collectively "Hannah"), but also the companies whose products are displayed by the Exiderdome exhibit, Siemens Aktiengesellschaft and Siemens Industry, Inc. (collectively "Siemens"), and the companies in charge of the promotional tour of the Exiderdome exhibit, OSK and its subsidiaries OSK Projektmanagement ("PM") and OSK Marketing & Communication ("Marketing"). OSK and PM are German companies; Marketing is a New York company. Ironhead is an Ohio company with its principal place of business in Toledo, Ohio.

Siemens hired OSK and its subsidiaries to manage and show the Exiderdome exhibit. In April 2008, Hannah Brothers and Marketing approached Ironhead about refurbishing and augmenting the barge as part of the showing of the Exiderdome exhibit. To facilitate this work, Ironhead alleges, several employees of the various defendants came to Toledo, Ohio to observe and direct the work. Among these were Ulrich Linnenberg ("Linnenberg"), the Managing Director of both OSK and PM, Bodo Breitbach, the chief architect for both OSK and PM, Achim Scheffler, an OSK designer, and approximately twenty other workers Ironhead alleges work for OSK (collectively "German employees").

Only Marketing had an explicit contract with Hannah concerning the barge (the Bareboat Charter Agreement). However, Ironhead alleges that much of the direction for work on the barge came not from either Hannah or Marketing, but from the German employees. Further, when Ironhead prepared to send bills to the OSK entities, in addition to Hannah, for that work, Ironhead alleges that Linnenberg specifically directed that any such invoices name only Marketing.

Eventually, the barge was fully prepared to host the Exiderdome exhibit and the tour got under way. However, Ironhead alleges that it had not, and has not, been paid in full. In an attempt to obtain payment, Ironhead had the barge, along with the Exiderdome exhibit, seized and sold. Not only did this action fail to make Ironhead whole, but the sale price was lower than the costs of the seizure, storage, and sale.

Plaintiff then commenced this diversity action. Shortly after the original complaint was filed, OSK moved for dismissal due to failure of service, lack of personal jurisdiction, and failure to state a claim. Ironhead requested permission to amend its complaint to fix these defects, which the Court granted. Ironhead then filed its First Amended Complaint containing claims for breach

of contract against Hannah and all three OSK entities, two counts of unjust enrichment (one against Siemens and the other against the other defendants), breach of quasi-contract against Siemens, and one count attempting to pierce OSK's corporate veil. Siemens, PM, and Marketing have answered and OSK moved for dismissal for lack of personal jurisdiction and for failure to state a claim.

## II. STANDARDS

*A. 12(b)(2) - Personal Jurisdiction*

In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). The method selected is left to the discretion of the district court. *Id.* Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co.*, 504 F.3d 927, 930 (6th Cir. 1974); *Serras*, 875 F.3d at 1214. The district court's choice determines the weight of the plaintiff's burden. *See Dean*, 134 F.3d at 1272; *Theunissen*, 935 F.2d at 1458; *Serras*, 875, F.2d at 1214.

3

> "When . . . a district court rules on a jurisdictional motion to dismiss . . . without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. Furthermore, a court . . . does not weigh the controverting assertions of the party seeking dismissal . . ."

*Dean*, 134 F.3d at 1272 (quoting *Compuserve*, 89 F.3d at 1262). Dismissal is only proper if all the facts taken together fail to establish a *prima facie* case for personal jurisdiction. *Compuserve*, 89 F.3d at 1262.

While the standard set forth above for establishing personal jurisdiction in the absence of an evidentiary hearing is minimal, a defendant is not without recourse. *Dean*, 134 F.3d at 172 (citing *Serras*, 875, F.2d at 1214-15). A defendant can move the Court to hold a pre-trial hearing, or the Court may so do on its own if it believes that the written filings raise enough controverted facts or call for assessing credibility, and order sufficient discovery in advance of the hearing. *Id.* Further, even if the court issues an order finding personal jurisdiction over the defendant, the defendant may raise lack of jurisdiction at trial. *Id.*

"In dealing with a diversity case, we look to the law of the forum state to determine whether personal jurisdiction exists." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). *See also Nationwide*, *Nationwide Mut. Ins. Co. v. Tryg Int'l*, 91 F.3d 790, 793 (6th Cir. 1996) (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1298 (6th Cir. 1989). That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Materials Users*, *Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). In *Bird*, however, the court stated:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." Id. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871-72.

Personal jurisdiction may be based on either general or specific jurisdiction. *Id.* at 873. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* at 738 (quoting *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). Specific jurisdiction may be based on a single act. *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 2 L. Ed. 223, 78 S. Ct. 199 (1957)).

*B. 12(b)(6) - Failure to State a Claim*

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Courts must accept as true all of the factual allegations contained in

5

the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc*., 484 F.3d 855, 859 (6th Cir. 2007). To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. at 93 (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to

6

the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

*A. Personal Jurisdiction*

Initially, the Court notes that the parties agree that this case does not implicate general jurisdiction. Because both sides have submitted affidavits in support of their arguments concerning personal jurisdiction and neither side has yet asked for a delay in the decision, the Court will decide the issue on the affidavits. This means that Plaintiff's burden is to make a *prima facie* showing of personal jurisdiction. It also means that the Court cannot give any weight to assertions found in Linnenberg's Declaration that are contradicted by allegations in the Affidavit of Anthony LaMantia ("LaMantia"), Ironhead's President. *Theunissen*, 935 F.2d at 1459 (citations omitted).

The Sixth Circuit test for the limits of due process consists of three prongs: "[f]irst, the defendant must purposefully avail [itself] of the privilege of acting in the forum state ... [s]econd, the cause of action must arise from the defendant's activities there ... [third], the acts of the defendant ... must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). OSK correctly notes that the Ohio long-arm statute, O.R.C. § 2307.382, does not extend to the limits of due process. *Brunner v. Hampson*, 441 F.3d 457, 465 (6th Cir. 2006) (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994)). However, the Sixth Circuit has also concluded that the "transacting any business" standard from O.R.C. § 2307.382(A)(1), Ohio long-arm element pertinent to this case, "is coextensive with the purposeful

availment prong of constitutional analysis." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx. 425, 432 (6th Cir. 2006). The difference between the due process test and the Ohio long-arm requirements, in this case, is that due process would be satisfied at the second step if the action merely "arose from" OSK's contacts with Ohio, where the Ohio long-arm requires that the Ironhead's injury be "proximately caused" by OSK's Ohio contacts. *Brunner*, 441 F.3d at 465-66.

OSK asserts that it neither "transacted any business" in nor "purposely availed" itself of Ohio because it is not named in any of the documents Plaintiff has yet produced. Further, Linnenberg stated that he and the other German employees were in the state in capacities other than in service to OSK. In other words, they were in Ohio as employees of either PM or Marketing. OSK correctly notes that a parent company does not have minimum contacts with a forum merely because of the actions of a subsidiary. *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 297 (6th Cir. 1964).

However, as noted above, the Court cannot grant Linnenberg's Declaration any weight in the face of a contradictory assertion in LaMantia's Affidavit. LaMantia specifically asserts that the German employees either were acting for OSK, or at least could have been. Notably, he mentions the ancillary identifiers Linnenberg, Bodo Breitbach, and Achim Scheffler used, business cards and email signatures, all identified only OSK. Thus, Ironhead asserts that the actions were OSK's and not those of one of its subsidiaries. At this stage of the case, the Court cannot weight the factual question of the capacity of the German employees when they were present in Ohio. Further, Plaintiff asserts that there was some agreement between it and OSK and that the contracts presented to this point only demonstrate the existence of that agreement.

8

OSK raises little issue with whether the alleged actions of the German employees, including supervision of the project over time and negotiation (through Linnenberg's direction of the invoices and orders placed which those invoices represent), satisfy the transacting business/purposeful availment test. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479-80 (1985) (negotiations and continuous interactions powerful for minimum contacts). OSK's arguments that the German employees and the contracts at issue pertain to other entities practically admits that these are sufficient to satisfy the first prong. Similarly, OSK raises little defense on the second prong, even to the higher, "proximate cause" standard. There can be little doubt that an injury related to a contract is "proximately caused" by connection to the state where the work under the contract was performed. Finally, it is rare, and requires a strong showing, for a plaintiff's personal jurisdiction argument satisfying the first two factors to then fail at the third. *Third Nat'l*, 882 F.2d at 1092. OSK has presented no special circumstances weighing against personal jurisdiction in this case.

Accordingly, the Court is satisfied, at this stage, that it can exercise personal jurisdiction over OSK in compliance with the dictates of due process and the Ohio long-arm statute. OSK has asked, in the case where the Court denies its Motion to Dismiss, that any such denial be without prejudice with regard to the jurisdictional argument. (Doc. No. 64 at 10 n10). As noted above, the Court's finding of personal jurisdiction at this stage does not foreclose OSK from raising the issue again at a later stage.

*B. Breach of Contract*

In its First Claim for Relief, Plaintiff alleges that OSK, among others, breached a contract. OSK defends by claiming that such contract must be the invoices attached to the First Amended

9

Compliant, none of which mention OSK. A close and liberal reading of the complaint, however, demonstrates that, while Plaintiff could have tried to allege invoices as the contracts at issue, it has not done so. Doc. No. 29 (paragraph 36 states that the invoices "documented" the "agreements," not that they were the agreements). Further, Plaintiff specifically alleges, and OSK has acknowledged, that, at the very least, there are more invoices involved in the agreement than attached to the First Amended Complaint. Instead, OSK makes much of what Plaintiff claims to have, but has not yet presented. This argument fails because it does not demonstrate why Plaintiff should have produced any of those documents at this stage.

In an Ohio breach of contract claim, "plaintiff must prove ... the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quotation omitted). The Court rejects OSK's argument that Ironhead fails at the first element due to the attached invoices. As noted, at this stage the Court must accept that the invoices are merely part of the proof of the existence of a contract, along with other extrinsic proof, which OSK notes cannot be used to establish the terms of a contract without mentioning any effect on proof of the existence of a contract. Even more potently than the invoices and the purported direction of those invoices, the allegation that German employees, in addition to Marketing employees, directed Ironhead's work on the barge satisfies the first element at the pleading stage. As in the personal jurisdiction context, OSK is bound to Ironhead's allegation that, at least some of the German employees including Linnenberg, were acting in their OSK capacities, as opposed to, or in addition to, their PM capacities.

OSK does not argue that Ironhead has not sufficiently pled performance (through work done on the barge and direction of the invoices to Marketing), breach (though incomplete payment), or damages (through monetary losses), other than to contest the facts of breach, by pointing at Hannah, and damages, by claiming full payment. OSK's only arguments are not appropriate at this stage.[1] Thus, the Court finds that Ironhead's First Claim for Relief adequately states a claim for relief and denies OSK's Motion to Dismiss that count.

*C. Unjust Enrichment*

In its Third Claim for Relief, Plaintiff asserts unjust enrichment against OSK, among others, for the work done on the barge. In Ohio, such a claim requires proof that "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment').'" *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

In its complaint, Ironhead identifies the "repaired and refurbished Barge Exiderdome" as the benefit conferred, and the claimed insufficient compensation for work done as the unjust circumstances. Doc. No. 29 at 12-13. However, Ironhead also pled that it detained and sold the barge. *Id*. at 13. Without regard to whether OSK actually received any of the benefit conferred or the justice of the situation involved, Plaintiff has specifically stated that, due to its own actions, OSK has not been able to retain the benefit alleged (the barge). These two allegations, taken together, fail to state a claim of unjust enrichment.

---

[1] Plaintiff also asserts contract through agency, in the alternative. The Court need not reach this alternative ground.

In responding to OSK's rebuttal of the benefit received element, Plaintiff also alleges that OSK received a benefit in the ability to perform under a lease with Siemens. However, that lease is mentioned, not in the First Amended Complaint, but in the Linnenberg's Declaration, which was neither attached to the First Amended Complaint nor mentioned therein. As such, Ironhead has no technical ground on which to base arguments concerning the contents of the lease. Even if the Court pushes the limits of liberally construing the First Amended Complaint and considers the lease mentioned in Linnenberg's Declaration, Plaintiff still fails to state a claim for unjust enrichment. Linnenberg stated that OSK leased the "Exiderdome" exhibit and mentioned the barge, but said nothing about the barge as a required element of the lease. Doc. No. 58-2. Further, Plaintiff's claim explicitly mentions "helping to fulfill a contract" which OSK can no longer fulfill due to Plaintiff's arrest of the subject matter of the lease contract.

Without regard to whether it has properly alleged any benefit received, Plaintiff has not alleged that OSK retains any such benefit. Thus, the Third Claim for Relief does not state a claim against OSK and the Court will grant OSK's Motion to Dismiss that count.

*D. Piercing the Corporate Veil*

In its Fifth Claim for Relief, Ironhead attempts to pierce the corporate veil between OSK, PM, and Marketing. In Ohio, a plaintiff attempting to pierce the corporate veil must demonstrate three things: "'(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind ... (2) control ... was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control.'" *Dombroski v. Wellpoint, Inc.*, 895 N.E.2d

538, 543 (Ohio 2008) (quoting *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993)).

Plaintiff's only allegation concerning the second prong is its assertion that OSK directed all invoices be addressed to Marketing. Rather than address how this amounts to "fraud or an illegal act," Ironhead depends on the proposition that fraud (or illegality) is not required for piercing. The Ohio Supreme Court has explicitly and unequivocally rejected this proposition. *Id.* at 545 ("we hold that to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similar unlawful act"). Without any justification, the Court need not, and does not, accept Plaintiff's bare assertion that OSK dictating that the invoices name Marketing is "fraud or an illegal act" sufficient to justify piercing OSK's corporate veil. Because Plaintiff has pled no other allegations regarding the second prong of the *Belvedere* test, the Court finds that it has failed to state a claim upon which relief may be granted and will dismiss the Fifth Claim for Relief.

## IV. CONCLUSION

For the reasons discussed herein, OSK's Motion to Dismiss (Doc. No. 58) is denied as to personal jurisdiction at this juncture, granted with regard to the Third and Fifth Claims for Relief, and denied with regard to the First Claim for Relief.

OSK is granted until January 18, 2012 to answer the First Amended Complaint.

IT IS SO ORDERED.

                                                         s/ *David A. Katz*
                                                         DAVID A. KATZ
                                                         U. S. DISTRICT JUDGE