IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

IRONHEAD MARINE, INC.,

                    Plaintiff,                    Case No. 3:10 CV 82

     -vs-

                                        <u>MEMORANDUM  OPINION</u>

DONALD C. HANNAH CORPORATION,
et al.,

                    Defendant.

KATZ, J.

      This matter is before the Court on the Motions for Judgment on the Pleadings of

Defendants Siemens Aktiengesellschaft and Siemens Industry, Inc. (collectively "Siemens")

(Doc. No. 72) and that of Defendants Oliver Schrott Kommunikation GmbH ("OSK GmbH"),

OSK Marketing & Communications, Inc. ("OSK Marketing"), and OSK Projektmanagement

GmbH ("OSK PM," collectively the "OSK entities") (Doc. No. 76).  The Court notes diversity

jurisdiction under 28 U.S.C. §1332 and proper venue under 28 U.S.C. §1391.  For the reasons

stated below, Siemens' motion will be denied and the OSK entities' motion will be granted in

part and denied in part.

## I. BACKGROUND

      Plaintiff Ironhead Marine, Inc. ("Ironhead") sued all defendants to recover fees it claims

owed and unpaid in connection with work done to adapt a barge to carry the Exiderdome exhibit

(the barge).  Ironhead is suing not only the owners of the barge, Hannah Brothers and Hannah

Maritime Corporation (collectively "Hannah"), but also the companies whose products are

displayed by the Exiderdome exhibit, Siemens, and the companies in charge of the promotional

tour of the Exiderdome exhibit, OSK GmbH and its subsidiaries OSK PM and OSK Marketing.

Siemens hired the OSK entities to manage and show the Exiderdome exhibit.  In April 2008, Hannah Brothers and OSK Marketing approached Ironhead about refurbishing and augmenting the barge as part of the showing of the Exiderdome exhibit.  Only OSK Marketing had an explicit contract with Hannah concerning the barge (the Bareboat Charter Agreement).  Further, when Ironhead prepared to send bills to the OSK entities, in addition to Hannah, for that work, Ironhead alleges that OSK GmbH specifically directed that any such invoices name only OSK Marketing.

Eventually, the barge was fully prepared to carry the Exiderdome exhibit and the tour got under way.  However, Ironhead alleges that it had not, and has not, been paid in full.  In an attempt to obtain payment, Ironhead had the barge, along with the Exiderdome exhibit, seized and sold (the seizure action).  Not only did the seizure action fail to make Ironhead whole, but the sale price was lower than the costs of the attorneys, storage, and sale.

Plaintiff then commenced this diversity action.  Shortly after the original complaint was filed, OSK GmbH moved for dismissal due to failure of service, lack of personal jurisdiction, and failure to state a claim.  Ironhead requested permission to amend its complaint to fix these defects, which the Court granted.  Ironhead then filed its First Amended Complaint containing claims for breach of contract against Hannah and all three OSK entities (Count I), two counts of unjust enrichment (one against Siemens, Count II, and the other against the other defendants, Count III), breach of quasi-contract against Siemens (Count IV), and one count attempting to pierce OSK GmbH's corporate veil (Count V).  Siemens, OSK PM, and OSK Marketing answered and OSK GmbH moved for dismissal for lack of personal jurisdiction and for failure to state a claim.

2

Late last year, the Court denied OSK GmbH's motion with regard to personal jurisdiction and Count I (contract). The Court granted OSK GmbH's motion to dismiss Count III (unjust enrichment), finding that Ironhead's pleadings with regard to the seizure action undermined any claimed retention of the benefit of the barge by OSK GmbH. Also, the Court dismissed Count V, which sought to pierce the corporate veil between OSK GmbH and its subsidiaries.

After the Court handed down this opinion, OSK GmbH answered the Amended Complaint. Siemens moved for judgment on the pleadings on both Counts II and IV, relying on the Court's previous opinion. The OSK entities also moved for judgment on the pleadings requesting dismissal of Counts III and V with regard to OSK PM and OSK Marketing and dismissal of Ironhead's claim for attorney fees from the seizure action under Count I with regard to all three OSK entities.

## II. STANDARD

The same pleading requirements apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a motion for judgment under the pleadings pursuant to Rule 12(c). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). On a motion for judgment on the pleadings, all well-pleaded allegations of the non-moving party must be taken as true. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). The pleadings must demonstrate sufficient factual matter, if taken as true, which state a claim "plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 470 (2007). "A plaintiff falls short if [they] plead[] facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct. . . .'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir.) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50) *cert denied*, 131 S.Ct.

3

1047 (2011). The Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

Initially, the Court notes that Ironhead, in defending against the motions of Siemens and the OSK entities, has presented evidence which is derived from neither the Amended Complaint nor the public record. If the Court were to consider any of these materials, it would have to convert the motions to Rule 56 summary judgment motions. *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). The only way to avoid conversion would be to exclude the evidence from consideration at this stage. *Id.* The Court agrees with several other district courts which have rejected similar attempts to defeat Rule 12 motions with new evidence as inappropriate, and will exclude Ironhead's new evidence rather than convert the motions. *See Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F.Supp2d 983, 988 (D.Ariz. 2007) ("Plaintiff harbors the erroneous notion that including extraneous materials in opposition to Defendants' motion forces the Court to treat the motion as one for summary judgment"); *see also Lewis v. State Farm Fire & Cas. Co.*, 2011 WL 1642313 at *5n3 (S.D.Ala.) (Relying on *Ranch Realty* to reject evidence instead of converting motion); *Federal Ins. Co. v. Bonded Lightning Prot. Sys., Inc.*, 2008 WL 5111260 at *3 (S.D.Fla.) (rejecting plaintiff's attempt to convert defendant's motion); *Simmons v. Med. Coll. of Ohio*, 2004 WL 2713082 at *2-3 (N.D.Ohio) (excluding plaintiff's evidence rather than converting the motion).

*A. Siemens' Motion*

In its motion, Siemens seeks dismissal of both Counts II (unjust enrichment) and IV (breach of quasi-contract) from the Amended Complaint.  Siemens correctly notes that, under Ohio law,[1] these claims are essentially the same thing, except with regard to calculation of damages.  *Reisenfeld & Co. v. Network Group, Inc.*, 227 F.3d 856, 862n1 (6th Cir. 2002).  They require proof of "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment').'"  *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

Siemens' motion relies almost entirely upon the invocation of this Court's prior decision and the law of the case doctrine.  Simply put, "[u]nder the doctrine of the law of the case, a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation."  *United States v. Todd*, 920 F.2d 399, 403 (6th Cir. 1990) (*citing Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  However, not only does the doctrine fail to apply if the current issue can be relevantly distinguished from the earlier decision, but it "merely directs the court's discretion; it does not limit the court's power."  *Niemi v. NHK Spring Co.*, 543 F.3d 294, 308 (6th Cir. 2008) (*quoting Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)); (*citing United States v. Graham*, 327 F.3d 460, 464 (6th Cir. 2003)).

In dismissing the unjust enrichment claim against OSK GmbH, the Court found that Ironhead had failed to plead the third element of unjust enrichment against OSK GmbH because

---

[1] The parties do not dispute that Ohio law applies in this diversity case.

Ironhead prevented OSK GmbH's retention of the only allegedly conferred benefit, the barge. This is the finding Siemens wishes to piggyback by pointing to nearly identical allegations in Counts II and IV.  However, unlike the unjust enrichment claim against OSK entities and Hannah (Count III), the Counts involving Siemens also mention the use of the barge as a "mobile showcase" for Siemens' products.  Amended Complaint at 10, 13.  In other words, the Amended Complaint clearly notes that Siemens and the OSK entities occupied distinct roles with regard to the Exiderdome tour.  As such, this Court's ruling in relation to one role does not control with regard to a different role.  Further, the difference in benefits - merely having the barge and using the barge to fulfill a marketing contract versus marketing products for sale - shows that, unlike OSK GmbH, Siemens is alleged to have received at least some benefit which it has retained. The weighing of this benefit and the balance of equities involved is a factual question not suited to determination under Rule 12.

In addition to their arguments regarding this Court's previous decision, Siemens makes one independent attack on Counts II and IV.  In their reply brief (Doc. No. 85 at 3) Siemens claims that the OSK entities have been paid in full and thus the Siemens defendants "have not received something for nothing."  *New Haven Supply Co. v. Murphy*, 584 N.E.2d 1319, 1322 (Ohio Ct. App. 1989).  This argument strongly resembles the findings in several Ohio Court of Appeals cases involving construction contractors and subcontractors where unjust enrichment suits were allowed by subcontractors against owners only where the owners had not paid the contractors.  *Reisenfeld*, 277 F.3d at 861 (citations omitted); *New Haven Supply*, 584 N.E.2d at 1322 (owner paid, so no unjust enrichment); *Fairfield Ready Mix v. Walnut Hills Assocs.*, 572 N.E.2d 114, 116 (Ohio Ct. App. 1989) (owner paid, thus no "gain" tied to plaintiff's "loss");

*Banks v. City of Cincinnati*, 508 N.E.2d 966, 969 (Ohio Ct. App. 1986) (on dismissal, complaint alleges payment to principal contractor, thus no "tangible benefit was ultimately conferred upon the property owner by the absence of the reasonable compensation necessary to prevent unjust enrichment"); *see also Booher Carpet Sales, Inc. v. Erickson*, 1998 WL 677159 at *7 (Ohio Ct. App.) ("when the property owner has fully paid another for particular improvements, the subcontractor may not recover in unjust enrichment for work or materials provided in connection with those improvements").  While Siemens may occupy a similar position to a homeowner (or commercial property owner) it is hardly clear that the rule cited by Siemens can be expanded beyond protection of an owner in the context of construction.  *See Steel Quest, Inc. v. City Mark Constr. Servs., Inc.*, 1997 WL 674614 at *2 (Ohio Ct. App.) (denying extension to contractor in suit by sub-subcontractor when subcontractor paid).

Far more importantly at this stage, and clearly fatal to Siemens' motion, Siemens' claim that the OSK entities have been paid does not come from the Amended Complaint and is supported only as argument of counsel.  Thus, the foundation of the argument, which has not been presented based on either Ironhead's allegations, any permitted attachments, or the public record, disappears.

Thus, neither of Siemens' arguments (this Court's previous decision and full payment of the defendant) justify relief under Rule 12.  Therefore, the Court will deny Siemens' Motion for Judgment on the Pleadings.

*B. Count III*

Unlike Siemens, OSK PM and OSK Marketing allegedly received the exact same benefit from Ironhead as OSK GmbH.  In fact, all three OSK entities are listed together in Count III,

7

with no distinction alleged (and even in its attempt to save this claim, Ironhead does not distinguish among the three).  As such, the OSK entities' motion with regard to Count III is well taken.

Ironhead claims that it can prevent this result by presenting "new evidence" to defeat the application of the law of the case doctrine.  The Court has already stated that "new evidence" is not appropriate at this stage and excluded Ironhead's submissions.  However, Ironhead's arguments more strongly resemble new theories of liability than new evidence.  Thus, they are more appropriately treated as an implicit motion to amend for which no new evidence would be required, or pertinent.  *See Niemi*, 543 F.3d at 307.

In response to the Court's finding that the seizure prevented retention of the benefit of the barge, Ironhead attempts to offer a new theory of a benefit it claims OSK PM and OSK Marketing have retained.[2]  Ironhead argues that even if the OSK entities have not retained the benefit of the barge, they have retained a benefit with regard to their ability to market their services due to having completed a portion of the Exiderdome tour for 2008.

In some ways, this allegation resembles the theory Ironhead alleged against Siemens which the Court just found to be distinguishable from the theory on which the Court ruled in its earlier decision.  However, there are a few important distinctions between the theory of marketing benefit to Siemens and marketing benefit to the OSK entities.  First, the Amended Complaint mentions only the marketing of Siemens' products.  Even so, the Court is already construing Ironhead's argument as an attempt at further amendment.  Second, given the nature of

---

[2] Though it does not ask the Court to reconsider the decision regarding OSK GmbH, Ironhead directs its arguments at all three OSK entities indiscriminately.

the Exiderdome tour, it is a much harder case for Ironhead to make that it conferred the benefit at issue on the OSK entities as opposed to the benefit conferred on Siemens.  In other words, even in support of this new theory, Ironhead does not allege that the point of the Exiderdome tour was to promote the OSK entities' promotion services, but instead that they (allegedly) merely capitalized on the tour to demonstrate their services.  Further, Ironhead has never claimed, even as part of these new allegations, any insight of its own, even if not offered to the marketing community or consumers, into the services of the OSK entities.  Thus, unlike the benefit of the barge with regard to the Exiderdome exhibit meant to sell the Siemens products demonstrated therein,[3] the benefit of the barge was at best tenuously connected to the claimed benefit of promoting the promotion services of the OSK entities.

If the benefit received by the OSK entities is insufficiently connected to the activities of Ironhead to establish that Ironhead conferred that benefit, Ironhead's attempted amendment will be futile.  *The Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (unjust enrichment requires "causal connection between this benefit and any alleged detriment to plaintiff"); *see also Wuliger v. Cannella Response Television, Inc.*, 2011 WL 3901810 at *9 (N.D.Ohio) (benefit received not the same as that conferred); *Struna v. Convenient Food Mart*, 828 N.E.2d 647, 652-53 (Ohio Ct. App. 2005) (third-party construed benefit, rather than plaintiff, even though third-party "would not have conferred this benefit absent" plaintiff's actions).  Further, this new theory is similar to that considered in *Hiram College v. Courtad*, 834 N.E.2d 432 (Ohio Ct. App. 2005).  In that case, the court rejected the plaintiff's theory that the

---

[3]

The new theory of benefit is also notably distinct from the benefit of the ability of the OSK entities to promote the products of *Siemens* under a contract between those parties.  That was part of the benefit theory the Court already dismissed as to OSK GmbH.

defendant, a student who withdrew from classes after a few weeks, derived benefit sufficient to support a claim for unjust enrichment from those few weeks of classes in absence of credit toward graduation.  *Id.* at 434.  Here, Ironhead is attempting to claim that some portion of the OSK entities' self-promotion is derived from its activities in the face of the primary benefit of those activities: the refurbished barge.

Ironhead's proposed theory, that it conferred the benefit of self-promotion by the OSK entities on the OSK entities, in the face of interference with the Exiderdome tour allegedly used for such self-promotion, is legally insufficient.  Unlike the unretained benefit of the barge, Ironhead's allegations of marketing benefit to the OSK entities instead fails on the first element, conferral of a benefit, on which the Court has not previously ruled.  Because Ironhead did not attempt to distinguish OSK PM and OSK Marketing from OSK GmbH with regard to the Court's prior ruling, and because the new theory is futile, the Court will grant the OSK entities' motion with regard to dismissal of Count III as to OSK PM and OSK Marketing.

*C. Count V*

The OSK entities also moved to dismiss Count V of the Amended Complaint with regard to OSK PM and OSK Marketing.  Again, they rely on law of the case and this Court's finding that Ironhead failed to plead allegations sufficient to satisfy the second prong of *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993).  However, Ironhead's Amended Complaint only mentions control sufficient to disregard the distinction between OSK GmbH and its subsidiaries.  Because there is no relief absent OSK GmbH, which the Court addressed, the whole of Count V was already dismissed.

Ironhead did not attempt to resurrect this claim by alleging some possible relief between OSK Marketing and OSK PM, instead choosing to reargue its claim with regard to OSK GmbH's actions.  Further, the Court already found that Ironhead failed to explain how OSK GmbH's alleged direction of invoices satisfies the second prong of the *Belvedere* test.  Rather than offer an explanation or change theories, Ironhead simply presents the same assertion (OSK GmbH's direction of invoices, also used for the control element, and the insufficient payment). Repetition has not solved the deficiencies of the argument.[4]

Because the Court already dismissed Ironhead's attempt to pierce OSK GmbH's corporate veil and Ironhead has not presented any theory of piercing the veil between OSK PM and OSK Marketing, Count V is empty.  In other words, Count V only implicated OSK GmbH, absent a new theory from Ironhead to resurrect the claim the Court already dismissed, Count V is already gone.  Therefore, the OSK entities' motion is moot with regard to Count V.

*D. Count I*

All three OSK entities seek dismissal of the portion of Count I seeking recovery for Ironhead's attorney fees incurred in the seizure action.  Ironhead acknowledges that it seeks an exception to the "American Rule" against awarding attorney fees to a prevailing party.  Its theory rests on the Ohio rule allowing legal fees in some breach of contract claims "if the trier of fact determines that the fees are the legal consequences of the original wrongful act."  *Homes by Calkins, Inc. v. Fisher*, 634 N.E.2d 1039, 1046 (Ohio Ct. App. 1993); *see also S & D Mech. Contractors, Inc. v. Enting Water Conditioning Sys., Inc.*, 593 N.E.2d 354, 363 (Ohio Ct. App.

---

[4] As one author put it "Insanity is doing the same thing over and over again, but expecting different results."  Rita Mae Brown, Yale Book of Quotations (Fred R. Shapiro ed, 2006).

1991) ("legal fees incurred in the third-party litigation ... attributable to ... wrongful breach ... are thus recoverable as compensatory damages").

The OSK entities respond by noting that the law Ironhead relies on involves suits with third-parties. Further, they say, the action at issue here was an *in rem* action to recover under the contract at issue. Thus, they say, Ironhead cannot benefit from the rule involving third-party suits because the seizure action was not one.

The missing piece in this argument is the part that shows that the seizure action, nominally against the ship, was actually against the OSK entities. Not only have they failed to present any legal support for the proposition that Ironhead's sought relief (the payment it seeks, again, here) cancels the third-party nature of the barge or that the barge cannot be a third party, but also the OSK entities fail to account for the effect of Hannah. Most notably, Ironhead alleges that Hannah owned the barge. If the barge is not the real party for determining whether the seizure action was a third-party suit, it stands to reason that the owner would be the most likely real party at interest. Further, given the vagueness of the situation at this stage of the case, and that the OSK entities merely attempt to dismiss a portion of the damages under the claim at issue, the Court agrees with Ironhead that the OSK entities attack on Count I with regard to attorney fees from the seizure action is premature; the issue may never even arise if Ironhead cannot prove breach. *See Dalessio v. Williams*, 675 N.E.2d 1299, 1301 (Ohio Ct. App. 1996) (breach required in suit for attorney fees under *S & D Mech.*).

The OSK entities also attack attorney fees under Count I with regard to admiralty law. Not only does the above holding moot this point, but the OSK entities' argument depends, in

part, on a case which was overruled on the point of attorney fees.  *Vaughan v. Atkinson*, 291 F.2d 813 (4th Cir. 1961), *overruled*, 369 U.S. 517, 530-31 (1962).

Thus, the Court determines that it would not be appropriate to dismiss the portion of Count I involving attorney fees from the seizure action against the OSK entities.  Their motion will be denied on that ground.

Finally, the Court notes that Hannah Maritime Corporation and Hannah Brothers have not yet appeared in this case.  The time is ripe for a default judgment.

### IV. CONCLUSION

For the reasons discussed herein, Siemens' Motion for Judgment on the Pleadings (Doc. No. 72) is denied and the OSK entities' Motion for Judgment on the Pleadings (Doc. No. 76) is granted as to OSK Marketing and OSK PM with regard to Count III, moot with regard to Count V, and denied with regard to attorney fees from the seizure action under Count I.

Ironhead shall file a Motion for Default Judgment against Hannah Maritime Corporation and Hannah Brothers by May 10, 2012.

IT IS SO ORDERED.

__ s/ *David A. Katz* ____
DAVID A. KATZ
U. S. DISTRICT JUDGE