IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

IRONHEAD MARINE, INC.,

                Plaintiff,         Case No. 3:10 CV 82

  -vs-

                                          MEMORANDUM OPINION

DONALD C. HANNAH CORP., et al.,

                Defendant.

KATZ, J.

Siemens Aktiengesellschaft and Siemens Industry, Inc. (collectively known as Siemens) have moved for summary judgment to dismiss Ironhead Marine, Inc.'s complaint. (Doc. No. 116). Ironhead has filed a response (Doc. No. 121), and Siemens has filed a reply. (Doc. No. 123).

OSK Marketing and Communication, Inc., Oliver Schrott Kommunikation GmbH, and OSK Projektmanagement GmbH (collectively known as OSK) have also moved for summary judgment. (Doc. No. 117). Ironhead has filed a response (Doc. No. 120), and OSK has filed a reply. (Doc. No. 124).

I. Facts

The following facts are undisputed. The case concerns litigation involving Barge Exiderdome No. 1, a vessel which was used as a traveling showcase for the technology company Siemens. In addition to the present case, litigation relating to the Exiderdome is also before the Court in *Vinik Marine, Inc. v. Ironhead Mar. Inc.*, Case No. 3:12-cv-2204.

Ironhead operates a shipyard and dry dock located in Toledo, Ohio, where it performs such services as refurbishing, repairing, and restoring ships and barges. Around April 2008, Ironhead was approached by several entities, including Hannah Maritime Corporation, Hannah Marine Corporation, Hannah Brothers (collectively referred to as Hannah), and OSK for the purposes of performing work on the Exiderdome. Ironhead was retained to perform work on the barge and to

install a traveling Siemens exhibit on the deck of the barge. The barge was then to tour a variety of cities, by water, to show the exhibit to potential Siemens customers.

Ironhead performed the services requested. Despite performing the work, and after the Exiderdome left Ironhead's shipyard, Ironhead was not paid in full for the work performed. Ironhead subsequently had the Exiderdome arrested. The vessel was secured by the United States Marshals, pending the sale of the vessel at auction. While the Exiderdome was under arrest, Vinik was first retained by the United States Marshals, and then independently, to provide *custodia legis* services to the barge prior to auction.

On January 14, 2010, Ironhead sued Hannah, OSK, and Siemens in this Court for payment of the amount Ironhead was owed for its work on the barge, along with expenses, attorneys' fees, and the "attachment, storage and sale of the Barge Exiderdome."

Ironhead alleges that Siemens is liable for the services Ironhead performed on the Exiderdome pursuant to the doctrines of unjust enrichment and breach of quasi-contract. (Doc. No. 29). Under the unjust enrichment theory, Ironhead asserts that Siemens retained Hannah and OSK to work with Ironhead for the refurbishment of the Exiderdome. Before the barge left Ironhead's shipyard, representatives of Siemens inspected and gave final approval of Ironhead's work. Ironhead claims that Siemens was permitted to take advantage of the work Ironhead invested into the barge. Ironhead states that if Siemens is not required to fairly compensate Ironhead for the benefit it gained from the work done on the barge, Siemens will be unjustly enriched at the expense of Ironhead. Regarding the breach of the quasi-contract claim, Ironhead alleges that Siemens gave the necessary specifications for the barge to OSK and these guidelines where then conveyed to Ironhead.

During discovery, Ironhead admitted that it: (1) never received a purchase order from Siemens; (2) never sent Siemens an invoice; (3) never billed Siemens; (4) never had a contractual agreement with Siemens; (5) never received a guarantee of payment from Siemens; (6) never sought a guarantee of payment from Siemens; and (7) prior to the barge's arrival at Ironhead's facilities, never had any contact with Siemens. (Doc. No. 116–3, p. 7). Ironhead admittedly had one communication with a Siemens representative. This communication occurred the day before the barge was to leave the facility. Ironhead attested that a Siemens representative inspected the barge and said it looked "fantastic." (Doc. No. 116–3, p. 7). Following the barge's removal from Ironhead's facilities, Ironhead had no further interaction with Siemens. (Doc. No. 116–3, p. 8).

Siemens provided uncontested evidence that the company hired OSK to be responsible for the designing and building of the Exiderdome. Siemens leased the container buildings involved with the tour from OSK. No joint venture was created by the companies and Siemens was simply OSK's customer. (Doc. No. 116–3, p. 23).

On March 3, 2008, OSK entered into a contract with Hannah which owned the barge that transported the Exiderdome. Siemens was not a party to the agreement. In April 2008, Hannah approached Ironhead to refurbish the barge while OSK subsequently met with Ironhead regarding the project. Siemens's contract was with OSK, which Siemens paid in full. (Doc. No. 116–3, p. 23).

Ironhead alleges that OSK breached its contracts and is therefore liable for the services Ironhead performed on the Exiderdome, but has yet to be paid. Ironhead claims that the agreements are documented by a series of purchase orders and invoices for materials and services performed by Ironhead on the Exiderdome. Ironhead also states that due to the debt owed, it was forced to have the Exiderdome arrested to satisfy the amount owed. As a result of the arrest,

Ironhead seeks reimbursement for all costs, expenses, and attorney's fees related to the arrest and sale of the Exiderdome.

## II. Summary Judgment

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court views the facts in the record and reasonable inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The Court does not weigh the evidence or determines the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita,* 475 U.S. at 586). The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over

material facts remain; evidence that is "merely colorable" or "not significantly probative" is insufficient. *Anderson,* 477 U.S. at 248–52.

### III. Discussion as to Siemens

Siemens is entitled to judgment as a matter of law. Under Ohio law, which is applicable to this case,

> unjust enrichment is a claim under quasi-contract law against a person in receipt of benefits that he is not justly and equitably entitled to retain. Unjust enrichment entitles a party only to restitution of the reasonable value of the benefit conferred. The elements of an unjust enrichment claim are as follows: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

*Crawford v. Hawes*, 995 N.E.2d 966, 975 (Ohio Ct. App. 2013) (citations omitted). *See also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 384–85 (6th Cir. 2011).

In determining whether a defendant received an unjust or unconscionable benefit, the Court must consider whether "the defendant was the party responsible for the plaintiff's detrimental position." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (citation and internal quotation marks omitted). The doctrine provides an equitable remedy to prevent injustice. *Id*. Thus, Ironhead must show that Siemens received enrichment that is unjust. *Id*. It is insufficient for Ironhead to merely prove that the company conferred a benefit upon Siemens. *Id*. Rather, Ironhead must prove that, under the circumstances, it has a "superior equity so that, as against . . . [the plaintiff], it would be unconscionable for the . . . [defendant] to retain the benefit." *Id*. (citation and internal quotation marks omitted).

The undisputed facts establish that Siemens was not responsible for Ironhead's detrimental position. There were no contracts, purchase orders, bills, or business relationship between Siemens and Ironhead. (Doc. No. 116–3, p. 7). The single interaction which Ironhead had with

Siemens occurred the day before the barge was launched when a Siemens employee examined the barge and praised the work Ironhead performed. (Doc. No. 116–3, p. 7). Siemens's contract was with OSK to conduct its promotional work, a contract which Siemens paid in full. (Doc. No. 116–3, p. 23). To require Siemens to pay Ironhead for services it has already paid to OSK would be unconscionable to Siemens. Given the lack of any business relationship between the parties and the fact Siemens did nothing to the detriment of Ironhead, Siemens did not engage in any unjust conduct which would require it to be liable to Ironhead under Ohio's doctrine of unjust enrichment. *Andersons,* 348 F.3d at 502.

Ironhead's second claim that Siemens is liable under a quasi-contract theory fails for the same reasons the unjust enrichment claim fails. Under Ohio law, the three elements for a quasi-contract claim are the same as for an unjust enrichment claim. *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 860 (6th Cir. 2002) (citations omitted); *Crawford*, 995 N.E.2d at 975. As previously explained, Siemens had no relationship with Ironhead and paid OSK the money it was contractually obligated to pay. Siemens received no unjust benefit under the facts of this case. *Reisenfeld*, 227 F.3d at 859. Therefore, Siemens is entitled to judgment as a matter of law.

## IV. Discussion as to OSK

The Court dismissed Ironhead's allegations regarding unjust enrichment and corporate veil allegations on April 10, 2012. (Doc. No. 88). Thus, Ironhead's only remaining claim against OSK is its breach of contract claim.

Ironhead argues that OSK is not entitled to summary judgment as a matter of law because there is an issue of fact regarding whether Ironhead and OSK entered into a contractual relationship. Ironhead argues, contrary to OSK's assertion, that the invoices and purchase orders Ironhead submitted for payment were never meant to constitute a written offer between the parties.

Rather, the purchase orders were to commemorate and document the work Ironhead performed and which OSK was obligated to pay. Ironhead states that OSK's argument that a contractual relationship existed between the parties only if OSK signed the submitted purchase order ignores the fact that the purchase orders were evidence of work that had "already been contracted for via oral agreement." (Doc. No 120, p. 18) (emphasis in original).

Under Ohio law,

[t]he elements of a contract, whether oral or written, are well known:

> A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.

*Donofrio v. Whitman*, 947 N.E.2d 715, 721 (Ohio Ct. App. 2010) (citations and internal quotation marks omitted). The "[t]erms of an oral contract may be determined from 'words, deeds, acts, and silence of the parties.'" *Id*. at 722 (citations omitted). Because there are several disputed service charges, for simplicity the Court will individually address each purchase order or invoice in question.

    A. Invoices IM 330801, IM 190801, and IM 340801

OSK moved for summary judgment on invoices identified as IM 330801, IM 190801, and IM 340801. OSK argues that these invoices are for services which Ironhead performed on Hannah tug boats. (Doc. 117–5, p. 25). Ironhead, in its response, admits that these invoices are the responsibility of Hannah and agrees that OSK is not liable for these charges. (Doc. 120, p. 37). Because Ironhead concedes that OSK is not responsible for these invoices, summary judgment is granted to OSK regarding the invoices identified as IM 330801, IM 190801, and IM 340801.

    B. Invoice IM 320803

Invoice IM 320803 concerns sandblasting and painting services which Ironhead performed. (Doc. No. 117–4, p. 32). The invoice, for the total sum of $203,458, states that the service was "Sold To: Hannah Marine" of Lemont, IL, and identifies Hannah Marine as the customer on the purchase order. (Doc. No. 117–4, p. 32).

In his deposition, Mr. Anthony LaMantia, who owns Ironhead with his wife (Doc. No. 117–4, p. 84), testified that no written contract between Ironhead and OSK existed for painting and sandblasting services. (Doc. No. 117–4, p. 214). In the "Repair Specification General Conditions Exiderdome 1 May–June 2008" (Doc. No. 117–4, pp. 662–72), which sets forth the repairs and services which were to be provided for the barge, Hannah specifically directs that the barge is to be sandblasted and painted. (Doc. No. 117–4, pp. 671–72). Because this evidence explicitly establishes that the sandblasting and painting were ordered and billed to Hannah, OSK is not liable for these services. Accordingly, summary judgment is granted to OSK regarding the $203,458 contained in invoice IM 320803.

C. Invoice IM 320801–02

Invoice IM 320801–02 concerns the final billing on the Exiderdome barge totaling $268,655.55. (Doc. No. 117–4, pp. 716–20). Like invoice IM 320803, this invoice states that the services were "Sold To: Hannah Marine", with the "Customer ID" identifying Hannah Marine as the customer. In addition, Ironhead admits that this invoice was never sent to OSK for payment. (Doc. No. 117–4, pp. 72–73). Ironhead's admitted failure to provide OSK with this invoice provides further evidence that OSK is not liable for this sum.

Ironhead concedes that the purchase orders are "evidence of work that had already been contracted for via oral agreement" (Doc. No. 120, p. 18), and that these oral contracts "are evidenced . . . by the invoices and purchase orders . . . ." (Doc. No. 120, p. 25). Because this

8

invoice explicitly establishes that the services were charged to Hannah Marine, and Ironhead's admission that an invoice is a reflection of an oral contract between the named parties, OSK was not a party to this invoice. *Donofrio*, 947 N.E.2d at 722. Therefore, OSK is entitled to summary judgment as a matter of law regarding invoice IM 320801–02.

D. Invoice IJ 08–055–03

In invoice IJ 08–055–03, Ironhead billed OSK for work on providing a fender system for the barge. (Doc. No. 117–4, p. 30). However, the evidence establishes that Hannah, and not OSK, is the responsible party for this work.

In the previously discussed "Repair Specification" document (Doc. No. 117–4, pp. 662–72), which sets forth the repairs and services which were to be performed on the barge, Hannah specifically directs that the barge is to be equipped with new fenders. (Doc. No. 117–4, p. 672).

Mr. La Mantia further testified that he knew of no signed purchase order where OSK agreed to pay for the fenders. He further stated that he was not aware of any specific oral conversation or communication where a representative of OSK agreed to pay for the fenders. (Doc. No. 117–4, p. 202).

Mr. Terrence Evans, former Vice President of Maintenance and Engineering for Hannah, attested that he was responsible for overseeing the outfitting of the Exiderdome. (Doc. No. 121–3, pp. 41–42). In his affidavit, Mr. Evans admitted that Hannah is responsible for paying Ironhead for any work it requested to be performed pursuant to Hannah's obligations to OSK. (Doc. No. 121–3, p. 44). Emails between Ironhead and Mr. Evans, on behalf of Hannah, establish that Mr. Evans ordered the fender system for the barge. (Doc. No. 117–4, p. 712), which is consistent with the requirements of the "Repair Specification." (Doc. No. 117–4, pp. 667, 672). Because this

evidence establishes that Hannah ordered the fenders, OSK is not liable for this expenditure. Summary judgment is granted to OSK as to this issue.

D.  Storage of Equipment

The next contested amount concerns an equipment storage charge for seventeen months in the amount of $57,927.94, per invoice IM 320802–02. (Doc. No. 117–4, p. 714). The question regarding this charge is whether the parties ever agreed to a storage charge. In his deposition, Mr. LaMantia testified:

> Q. At this time, did you ever have any discussions with anyone from OSK regarding a charge for the items that you were storing?
> A. Yes, Carlos asked me how much I would charge them to store the materials there.
> Q. And what did you respond?
> A. I told them at the time, which was just prior to them leaving and just a few days afterwards, that we've had a good relationship with you and that I would be willing to store them free of charge as long as we settled the job fairly. And I had no – no doubt that that would happen.

(Doc. No. 117–4, p. 131).

Mr. LaMantia's testimony fails to establish a contract between the parties regarding the storage of the OSK equipment. An oral contract "may be determined from 'words, deeds, acts, and silence of the parties.'" *Donofrio*, 947 N.E.2d at 722. The contract must be "defined." *Id*. at 721. There must be a "meeting of the minds as to the essential terms of the contract," *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002), and the terms must be of sufficient particularity so as to form a binding contract. *Resources for Healthy Living, Inc. v. Haslinger*, No. WD–10–073, 2011 WL 1590503, at *4 (Ohio Ct. App. Apr. 22, 2011); *Wajda v. M&J Auto., Inc.*, No. 10–MA–7, 2010 WL 5621543, at *8 (Ohio Ct. App. Dec. 30, 2010). The Court finds that there is no enforceable contract regarding any storage charges for the OSK equipment because there is no evidence that

there was a "meeting of the minds" between the parties and the terms of the alleged contract were not defined with sufficient particularity as required by law.

Although Ironhead asserts that "it is clear that nothing was settled 'fairly' by the OSK Entities" (Doc. No. 120, p. 37), the facts are to the contrary. Mr. LaMantia admits that he stated he would store the materials for free as long as the job was "fairly" settled. There is no evidence what Mr. LaMantia means by the vague term "fairly," or when the job would be deemed "fairly" settled between these parties. There is no evidence regarding the terms of the storage charges Ironhead would impose if the job was not settled in accordance with Ironhead's vague "fairly" standard.

Mr. LaMantia's testimony seems to indicate that Ironhead could unilaterally define when the settlement reached the standard of "fair." There is no evidence that OSK agreed to be charged for the storage, agreed to the unidentified storage rate, or agreed to the unidentified storage details. Ironhead must show that OSK agreed to be charged for the storage fees, which it has not. Because the necessary elements of an enforceable contract under Ohio law have not been established, OSK is entitled to summary judgment regarding the requested storage fees. *Donofrio*, 947 N.E.2d at 721.

E. Lay-days, environmental, and insurance surcharges

In its amended complaint, Ironhead alleged that all the defendants "jointly and severally" owe it "for lay-days, environmental and insurance surcharges." (Doc. No. 29, pp. 15-16). OSK did not address these charges in its motion for summary judgment. (Doc. No. 117-5, p. 18). Therefore, these charges remain pending against OSK.

F. Consequential damages and attorneys' fees

OSK has moved for summary judgment regarding Ironhead's request for consequential damages and attorneys' fees involving the arrest action of the Exiderdome. The Court previously

11

held that OSK's challenge regarding attorneys' fees from the arrest was premature and "the issue may never even arise if Ironhead cannot prove breach." (Doc. No. 88, p. 12). Because the allegations regarding lay-days, environmental surcharges, and insurance surcharges are still pending, it would still be premature and inappropriate to rule on OSK's motion to dismiss the consequential charges and attorneys' fees. Accordingly, OSK's motion for summary judgment on these charges is denied at this time

V. Conclusion

Siemens's motion for summary judgment (Doc. No. 116) is granted and Ironhead's complaint against Siemens is dismissed.

The motion for summary judgment filed by OSK (Doc. No. 117) is granted as to invoices IM 330801, IM 190801, IM 340801, IM 320803, and IJ 08–055–03. Summary judgment is also granted to OSK on the equipment storage charge of $57,927.94 listed in invoice IM 320802–02. OSK's motion for summary judgment regarding Ironhead's expenses and attorneys' fees incurred in the arrest and sale of Exiderdome is denied as premature.

Still pending before the Court are Ironhead's allegations against OSK regarding the charges for lay-days, environmental surcharges, and insurance surcharges. (Doc. No. 29, pp. 15–16).

IT IS SO ORDERED.

    S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE

12