IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

IRONHEAD MARINE, INC.,

                    Plaintiff,                    Case No. 3:10 CV 82

-vs-

                                            MEMORANDUM OPINION

DONALD C. HANNAH CORP., et al.,          AND ORDER

                  Defendants.

KATZ, J.

Defendants OSK Marketing and Communication, Inc., Oliver Schrott Kommunikation GmbH, and OSK Projektmanagement GmbH (collectively known as OSK) have moved to strike Plaintiff Ironhead Marine, Inc.'s request for a jury trial contending the issues are maritime in nature. (Doc. No. 142). Ironhead has filed a response (Doc. No. 143), and OSK has filed a reply. (Doc. No. 146).

The Court is very disturbed that OSK has waited until the eve of trial to move to strike Ironhead's jury demand, arguing the case is an action in maritime. The case has been on the Court's docket for well over five years, with both sides proceeding under the Court's diversity of citizenship jurisdiction. 28 U.SC. § 1332. Through this lengthy litigation process, both sides have briefed and argued their position under § 1332, requesting rulings on numerous issues which have required the application of Ohio law.

If the action is only one in maritime, the dispute warrants a bench trial as there is no right to a jury trial in maritime actions. *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708–09 (1999); *Tull v. United States*, 481 U.S. 412, 417 (1987); *In re Muer*, 146 F.3d 410, 417 (6th Cir. 1998). The Court notes OSK itself has made a demand for a jury trial regarding its counterclaim against Ironhead. (Doc. No. 73, p. 20).

The first issue which must be addressed is whether OSK has waited too long to attempt to void Ironhead's jury demand and invoke the Court's maritime jurisdiction. The Sixth Circuit has not ruled on the issue, however, a similar situation has been addressed by the Fifth Circuit.

In *Eubanks v. Noble Offshore Corp.*, 224 F. App'x 319, 320 (5th Cir. 2007), Noble argued that the district court abused its discretion by granting, also on the eve of trial, Eubanks's motion to designate the litigation in maritime and to strike Eubanks's jury demand. By granting Eubanks's motion, Noble argued the district court violated the July 30, 2004 pretrial order because Eubanks's motion was not necessary to "prevent manifest injustice." *Id*. Noble further asserted the district court violated the scheduling order setting November 17, 2003, as the deadline for all pleading amendments. *Id*. (citing *Rachal v. Ingram Corp.*, 795 F.2d 1210, 1217 n.11 (5th Cir. 1986) (a motion to designate litigation as an admiralty or maritime claim and to strike the jury demand should be treated as a motion to amend the pleadings)). The Fifth Circuit found that the district court did not commit reversible error in granting the motion to designate the suit as a maritime action. *Id*.

The difficulty in applying *Eubanks* in this case is that Eubanks, as Plaintiff, is the party which sought to strike its initial jury request. In contrast, OSK, as the Defendant, is seeking to strike Plaintiff Ironhead's jury demand. The *Eubanks* question is moot as the Court concludes that the Supreme Court's two-part test to obtain maritime jurisdiction has not been satisfied.

In *New Hampshire Ins. Co. v. Home Sav. & Loan Co.*, 581 F.3d 420, 424–27 (6th Cir. 2009), the Sixth Circuit provided district courts with a detailed analysis for determining whether a contract issue is subject to maritime law:

> As the Supreme Court explained in [*Norfolk S. Ry. Co. v.*] *Kirby*, "[t]o ascertain whether a contract is a maritime one, we cannot look to whether a ship or other vessel

2

was involved in the dispute, as we would in a putative maritime tort case." 543 U.S. [14, 23 (2004)], 125 S. Ct. 385. Rather, we must "focus[ ] our inquiry on whether the principal objective of a contract is maritime commerce." *Id*. at 25, 125 S. Ct. 385 (emphasis added); *accord Sisson v. Ruby*, 497 U.S. 358, 367, 110 S. Ct. 2892, 111 L. Ed.2d 292 (1990) ("The fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" (quoting *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674, 102 S. Ct. 2654, 73 L. Ed.2d 300 (1982))). After the Court's decision in *Kirby*, there can be no doubt that our inquiry into whether a contractual dispute falls within our maritime jurisdiction must focus on whether the contract's "primary objective" has an "essentially maritime nature" and relates to "maritime commerce." 543 U.S. at 24–25, 125 S. Ct. 385 (finding that the contracts at issue were "maritime contracts" because "their primary objective is to accomplish the transportation of goods by sea from Australia to the eastern coast of the United States" (emphasis added)). In conducting this inquiry, *Kirby* also requires us to consider the contract as a whole. *See id*. at 24–26, 125 S. Ct. 385.

Although defining the central concern of our inquiry, the Supreme Court's decision in *Kirby* offers very little guidance as to how we are to determine what in fact is the "primary objective" of a mixed contract. . . . The Court's decision in *Kirby* also does little to clarify how we are to treat contracts that are incidental to maritime commerce. *See Planned Premium Servs., Inc. v. Int'l Ins. Agents, Inc.*, 928 F.2d 164, 165–66 (5th Cir. 1991) ("The focus becomes even more fuzzy when the scope is brought to bear on that genre of conventions known as preliminary contracts, i.e., contracts 'that involve preliminary services leading to maritime contracts.'" (citation omitted)). . . .

[T]he Supreme Court consistently has held that "the nature and subject-matter of the contract at issue should be the crucial consideration in assessing admiralty jurisdiction." *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S. 603, 611, 111 S. Ct. 2071, 114 L. Ed.2d 649 (1991); *New Eng. Marine Mut. Ins. Co. v. Dunham*, 11 Wall. 1, 78 U.S. 1, 26, 20 L. Ed. 90 (1870) ("[T]he true criterion [to determining whether federal maritime jurisdiction exists over a contractual dispute] is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions."). Although the Supreme Court has acknowledged that its decisions "do not draw clean lines between maritime and non-maritime contracts," *Kirby*, 543 U.S. at 23, 125 S. Ct. 385, its "abiding instruction," . . . is that the "answer" to whether maritime jurisdiction exists "depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions." *Kirby*, 543 U.S. at 24, 125 S. Ct. 385 (quotation marks and citations omitted). . . .

In *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S. Ct. 886, 6 L. Ed.2d 56 (1961), . . . the Court held that a shipowner's promise to assume responsibility for any improper treatment that his crew might receive at a New York hospital was a maritime contract, reasoning that this "fringe benefit" was "sufficiently related to peculiarly maritime concerns as not to put it, without more, beyond the pale of admiralty law." *Id*. at 736–38, 81 S. Ct. 886. In reaching that conclusion, the Court rejected the

"narrow" reading of the contract espoused by the court of appeals in that case. *Id*. at 736, 81 S. Ct. 886. As the Court explained in *Kirby*, *Kossick* stands for the proposition that a dispute involving a "fringe benefit" of a maritime contract nevertheless falls within the purview of federal admiralty jurisdiction so long as that promise, although itself attenuated from the business of maritime commerce, "was in furtherance of a peculiarly maritime concern." *Kirby*, 543 U.S. at 24–25, 125 S. Ct. 385 (internal quotations, alterations, and citations omitted). . . .

According to the Supreme Court, even where a contract's primary objective is maritime commerce, not "every term in every maritime contract can only be controlled by some federally defined admiralty rule." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S. Ct. 368, 99 L. Ed. 337 (1955). Rather, interpreting a particular provision of a maritime contract "may so implicate local interests as to beckon interpretation by state law." *Kirby*, 543 U.S. at 27, 125 S. Ct. 385 (citing *Kossick*, 365 U.S. at 735, 81 S. Ct. 886). As the Supreme Court has put it, even where the dispute between the parties arises out of a "maritime contract," a reviewing court "must clear a second hurdle" and determine whether "this case" is "inherently local" before applying federal law. *Id*. . . . Because this "second hurdle" arises only after the reviewing court is satisfied that the contract is a maritime contract, the "inherently local" nature of the case functions more like a basis for abstention than a prerequisite for jurisdiction. . . . .

We take the Supreme Court at its word that our inquiry should be focused on the nature and character of the contract as a whole . . . .

The dispute in the case before this Court concerns the financial responsibilities among the several parties regarding the various improvements made to the Exiderdome barge, along with its subsequent arrest and sale to offset the expenses for those improvements. (Doc. No. 135, pp. 2–3). The Exiderdome was designed and built to travel national and international waters to serve as a promotional vehicle for the products of the Siemens Corporations. (Doc. No. 125). The work performed on the barge could not be a more perfect example of an exclusive benefit being made to a ship or vessel engaged in maritime commerce. *New Hampshire Ins. Co.*, 581 F.3d at 430. Because the transaction relates to a vessel and the use of that vessel as an agent of commerce, the action is one in maritime. *See Kossick*, 365 U.S. at 736; *New Hampshire Ins. Co.*, 581 F.3d at 427–28.

The application of federal maritime law, however, involves a "two-step analysis." *Kirby*, 543 U.S. at 23. The first step, which has been satisfied, requires the contract to be a "maritime contract." *Id*. at 23–27. The second step requires that the case must not "so implicate local interests as to beckon interpretation by state law." *Id*. at 27–29. It is this second step which OSK has failed to satisfy.

This is a standard contract case requiring the resolution of which party may or may not be responsible for the various services and fees in dispute. Although several issues have been addressed by the Court, the rulings have required an examination of Ohio law. All parties argued those issues *only* under Ohio law, *not* maritime law. Because the unresolved issues still appear to require the Court to continue to interpret the state law of Ohio, the second step of the federal maritime law analysis has not been satisfied.

Finally, to convert the action to one of maritime at this stage of the litigation would create the bizarre result of having one portion of the litigation under diversity jurisdiction with the remainder under maritime jurisdiction. The only reason the remaining issues even exist is because they have withstood various motions to dismiss and for summary judgment. It would be absurd to suddenly try the remaining issues in maritime for the simple reason they withstood motions for summary judgment under the Court's diversity jurisdiction. To do otherwise would be inconsistent with the Court's application of Ohio law in rendering decisions on the previously adjudicated motions.

Conclusion

Accordingly, OSK's motion to strike Ironhead's jury demand is denied. The case shall proceed under the Court's diversity jurisdiction.

IT IS SO ORDERED.

                                                        S/ *David A. Katz*
                                                        DAVID A. KATZ
                                                        U. S. DISTRICT JUDGE